FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 05, 2024

SEAN F. McAVOY, CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MEGAN D.,<br><br>      Plaintiff,<br><br>      v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>      Defendant. | No. 2:23-CV-00378-ACE<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION<br><br>**ECF Nos. 11, 13** |

**BEFORE THE COURT** is Plaintiff's Opening Brief and the Commissioner's Brief in response. ECF No. 11, 13. Attorney Jeffrey Schwab represents Megan D. (Plaintiff); Special Assistant United States Attorney Lori A. Lookliss represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 5. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion and **DENIES** Plaintiff's Motion.

### JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income on February 24, 2021, alleging disability since January 1, 2018. Tr. 21, 83, 240-68. The applications were denied initially and upon reconsideration. Tr. 126-34, 137-43. Administrative Law Judge (ALJ) Jesse Shumway held a hearing on March 16, 2023, Tr. 47-77, and issued an unfavorable

1  decision on April 24, 2023. Tr. 18-46. The Appeals Council denied the request for
2  review on October 31, 2023, Tr. 1-6, making the ALJ's decision the
3  Commissioner's final decision for purposes of judicial review, which is appealable
4  to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for
5  judicial review on December 28, 2023. ECF No. 1.

## STANDARD OF REVIEW

6
7  The ALJ is tasked with "determining credibility, resolving conflicts in
8  medical testimony, and resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035,
9  1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with
10  deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*,
11  201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed
12  only if it is not supported by substantial evidence or if it is based on legal error.
13  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is
14  defined as being more than a mere scintilla, but less than a preponderance. *Id*. at
15  1098. Put another way, substantial evidence "is such relevant evidence as a
16  reasonable mind might accept as adequate to support a conclusion." *Richardson v.*
17  *Perales*, 402 U.S. 389, 401 (1971), (quoting *Consolidated Edison Co. v. NLRB*,
18  305 U.S. 197, 229 (1938)). If the evidence is susceptible to more than one rational
19  interpretation, the Court may not substitute its judgment for that of the ALJ.
20  *Tackett*, 180 F.3d at 1098; *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595,
21  599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or
22  if conflicting evidence supports a finding of either disability or non-disability, the
23  ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th
24  Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set
25  aside if the proper legal standards were not applied in weighing the evidence and
26  making the decision. *Brawner v. Sec'y of Health and Human Servs.*, 839 F.2d 432,
27  433 (9th Cir. 1988).
28

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the claimant bears the burden of establishing a prima facie case of disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the claimant from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show (1) that Plaintiff can perform other substantial gainful activity and (2) that a significant number of jobs exist in the national economy which Plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1497-1498 (9th Cir. 1984); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012). If a claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE FINDINGS

On April 24, 2023, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act. Tr. 18-46.

At step one, the ALJ found Plaintiff, who met the insured status requirements of the Social Security Act through December 31, 2022, had not engaged in substantial gainful activity since the alleged onset date. Tr. 23-24.

At step two, the ALJ determined Plaintiff had the following severe impairments: degenerative joint disease (DJD) of bilateral knees, left shoulder impingement, depressive disorder, anxiety disorder, attention deficit/hyperactivity disorder (ADHD), and posttraumatic stress disorder (PTSD). Tr. 24.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 25.

ORDER GRANTING DEFENDANT'S MOTION . . . - 3

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and found she could perform light work, with the following limitations:

> [s]he can walk no more than 30 minutes at a time; she can occasionally stoop; she is limited to simple, routine tasks; she can have occasional, superficial interaction with the public and coworkers; and she needs a routine, predictable work environment with no more than occasional, simple changes.

Tr. 27.

At step four, the ALJ found Plaintiff was unable to perform past relevant work.  Tr. 38.

At step five, the ALJ found that, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that existed in significant numbers in the national economy, including the jobs of marker/merchandise; small product assembler; and inspector/hand packager.  Tr. 39.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from at any time from the alleged onset date through the date of the decision.  *Id*.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and Title XVI of the Social Security Act.  The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff raises the following issues for review: (1) whether the ALJ conducted a proper step-two analysis; (2) whether the ALJ properly evaluated the medical opinion evidence; (3) whether the ALJ properly evaluated Plaintiff's symptom complaints; and (4) whether the ALJ conducted a proper step-five analysis.  ECF No. 11 at 7-19.

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

# DISCUSSION

## A.  Step Two

Plaintiff contends that the ALJ improperly rejected the diagnosis of rheumatoid arthritis.  ECF No. 11 at 7-10.  At step two of the sequential evaluation process, the ALJ must determine whether the claimant has any severe medically determinable impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1521, 416.921.  An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities."  20 C.F.R. §§ 404.1522, 416.922(a).  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal quotation marks omitted).  The claimant bears the burden of demonstrating that an impairment is medically determinable and severe.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  The step-two analysis is "a de minimis screening device [used] to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (quoting *Smolen*, 80 F.3d at 1290).

Here, the ALJ noted plaintiff's allegation she had rheumatoid arthritis (RA) and problems using her hands but concluded "there is no medically determinable impairment that could reasonably cause [Plaintiff] to have problems using her hands, as [RA] is not an established medically determinable impairment."  Tr. 24.  The ALJ concluded "specifically the medical evidence of record does not contain imaging studies, objective findings, or clinical signs regarding these complaints."  *Id*.  Plaintiff contends the ALJ erred in concluding affirmatively that Plaintiff does not have RA because the ALJ failed to discuss a lab result, the positive anti-CCP

test, because this lab test is "the one most sensitive and specific test for RA, [and] an objective finding that RA may be present." ECF No. 11 at 9. Defendant contends the ALJ reasonably found that RA was not a medically determinable impairment at step two because the facts did not establish that RA was an impairment and Plaintiff did not meet her burden demonstrating that RA was a medically determinable impairment. ECF No. 13 at 2-4. The Court agrees.

As Defendant points out, Plaintiff fails to acknowledge that Plaintiff's rheumatologist concluded that Plaintiff did not meet the criteria for RA, despite the evidence of lab work indicating anti-CCP antibody present. *Id*. Indeed, Plaintiff acknowledges that the positive lab result is an objective finding that RA *may* be present; Plaintiff provides no evidence, however, that this is conclusive. *See* ECF No. 11 at 9. Plaintiff has therefore not met her burden demonstrating that RA is a medically determinable impairment.

The evidence of record shows Plaintiff was evaluated for hip pain and positive CCP antibody lab results by rheumatology in April 2018. Tr. 963. The rheumatologist noted at that time "currently it remains unclear if [Plaintiff] has active RA, despite being CCP+"; and the specialist noted while Plaintiff had chronic pain in the large joints, there was no obvious evidence of acute synovitis and other labs showed normal inflammatory markers. Tr. 965. The rheumatologist opined "her current joint pain is most likely attributed to degenerative osteoarthritis," but also explained she would be monitored closely because "CCP positivity is quite specific to RA, so if she remains seropositive that there is higher risk she will develop RA"; and the specialist indicated Plaintiff should be rechecked every six months or so and prophylactic medication should be considered. *Id*.

At a May 2018 follow up visit with a family medicine ARNP, the provider noted they "discussed rheumatoid arthritis diagnosis after positive anti-CCP," as well as "prophylactic treatment to prevent degeneration of joints due to RA." Tr.

940.  The provider noted at that time Plaintiff was taking Plaquenil.  *Id*.  At an October 2018 rheumatology follow up, however, the rheumatologist again explained that Plaintiff "had CCP positive test without definitive evidence of RA." Tr. 829.  The specialist noted Plaintiff was not on any rheumatology medications at that time, and that while Plaintiff had tried Plaquenil, this medication was discontinued due to vision side effects and Plaintiff also reported it did not do much.  *Id*.  The specialist also noted while Plaintiff had a history of joint pain, at that time she denied problems or stiffness in the hands, wrists, elbows, ankles, or toes.  *Id*.  Upon physical exam, there was no evidence of active synovitis and no swelling on pain on exam of the hands, wrists, elbows, knees, and ankles.  *Id*. Neurological exam was normal, gait was normal, and Plaintiff did not have any rashes.  Tr. 829-30.

The rheumatologist again noted while the CCP lab was abnormal, rheumatoid factor and ANA lab tests were negative.  *Id*.  Plaintiff was assessed with positive anti-CCP test and polyarthritis and the rheumatologist again explained there were "no obvious signs of active RA at this time but will need to continue close monitoring."  Tr. 830.  In July 2021 consultative examiner Ryan Agostinelli, PA-C, noted Plaintiff's complaints of RA and indicated he reviewed the rheumatology records.  Tr. 1066.  He noted she continued to see rheumatology yearly to follow up regarding RA "though this is currently observational only . . . therapies not yet required."  Tr. 1070.

Plaintiff has not met her burden to show RA was a medically determinable impairment during the period at issue.  Accordingly, any error by the ALJ in failing to discuss the positive lab work was harmless.  Plaintiff is not entitled to remand on this issue.

**B.  Medical Opinion Evidence**

Plaintiff contends the ALJ erred by improperly evaluating the opinions of Plaintiff's medical sources.  ECF No. 11 at 10-13.  For claims filed on or after

March 27, 2017, pursuant to the applicable regulations, the ALJ does not give any specific evidentiary weight to medical opinions or prior administrative medical findings.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative findings include supportability, consistency, the source's relationship with the claimant, any specialization of the source, and other factors (such as the source's familiarity with other evidence in the file or an understanding of Social Security's disability program).  20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5).  Supportability and consistency are the most important factors, and the ALJ must explain how both factors were considered.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may explain how the ALJ considered the other factors, but is not required to do so, except in cases where two or more opinions are equally well-supported and consistent with the record.  *Id.*  Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).

The Ninth Circuit has addressed the issue of whether the regulatory framework displaces the longstanding case law requiring an ALJ to provide

specific and legitimate reasons to reject an examining provider's opinion. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The Court held that the 2017 regulations eliminate any hierarchy of medical opinions, and the specific and legitimate standard no longer applies. *Id.* at 788-89, 792. The Court reasoned the "relationship factors" remain relevant under the new regulations, and thus the ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* at 790, 792. Even under the new regulations, an ALJ must provide an explanation supported by substantial evidence when rejecting an examining or treating doctor's opinion as unsupported or inconsistent. *Id.* at 792.

### 1. Dr. Metoyer

In August 2017, Dr. Metoyer performed a mental evaluation and rendered an opinion on Plaintiff's level of functioning. Tr. 534-38. Dr. Metoyer diagnosed Plaintiff with PTSD and general anxiety disorder. Tr. 537. Dr. Metoyer opined Plaintiff had clear ability to reason and understand, some adaption skills, her remote memory was intact, and her sustained concentration and persistence were adequate based on the brief concentration tasks of the evaluation. He noted she "describe[d] some difficulty functioning outside her home environment. Describe[d] significant interpersonal challenges in her personal life and prior work environments as a result of anxiety and PTSD." *Id.* Dr. Metoyer opined Plaintiff's ability to interact with coworkers and the public was likely mild to moderately impaired, and that due to anxiety and PTSD symptoms and the tendency to isolate herself from others, Plaintiff's ability to maintain regular attendance in the workplace was mild to moderately impaired. *Id.* Dr. Metoyer opined Plaintiff's ability to compete a normal workday or work week without interruption from anxiety and PTSD symptoms was likely mild to moderately impaired, and

Plaintiff's ability to deal with the usual stress encountered in the workplace was markedly impaired if it involved interacting with other individuals.  Tr. 537-38.  Dr. Metoyer noted Plaintiff had some physical limitations that would be better addressed by a medical provider.  Tr. 538.

The ALJ determined Dr. Metoyer's overall opinion was generally persuasive with the exception of the marked limitation.  Tr. 34.  The ALJ found Dr. Metoyer's opinion generally persuasive because it was generally supported by his own examination findings and his narrative findings, and his opinion as to mild and moderate limitations was also consistent with the longitudinal record.  *Id*.  The ALJ found Dr. Metoyer's opinion Plaintiff had marked impairment in usual stress was vague and unclear, however, because "it conflates two issues into one (adaption and interaction with others)"; the ALJ explained, however, that "because the [RFC] contains a significant limitation on the interaction with others, the marked limitation here would not be triggered."  *Id*.

Plaintiff contends that the ALJ erred in considering and relying on Dr. Metoyer's opinion for the period at issue because it was rendered prior to her alleged onset date and the ALJ did not explain why it was relevant to the time period at issue; and Dr. Metoyer failed to consider a depressive disorder, which had potential to affect the mental RFC.  ECF No. 11 at 10-12.  Defendant contends the ALJ reasonably assessed Dr. Metoyer's opinion and the ALJ not required to ignore evidence prior to the alleged onset date.  ECF No. 13 at 6.

The Ninth Circuit has held "[m]edical opinions that predate the alleged onset of disability are of limited relevance."  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008).  The ALJ, however, is required to consider "all medical opinion evidence."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).  Here, Dr. Metoyer examined Plaintiff and rendered his opinion on her level of functioning as of August 17, 2017, just five months prior to Plaintiff's January 1, 2018 alleged onset date.  Tr. 534-38; *see* Tr. 21.  The ALJ noted the

opinion was from "prior to the period at issue" and found it only generally
persuasive.  Tr. 34.  It was reasonable for the ALJ to consider this opinion.

Further, while Plaintiff contends Dr. Metoyer failed to consider a depressive
disorder, which had potential to affect the mental RFC, and that the ALJ was
therefore required to explain why the opinion was relevant to the time period at
issue, the ALJ considered the supportability and consistency of Dr Metoyer's
opinion as required by the regulations.  Tr. 34.  Plaintiff has also not challenged
any of the reasons the ALJ gave for rejecting Dr. Metoyer's marked limitations,
and therefore any challenge to the findings is waived.  *See Carmickle*, 533 F.3d at
1161 n.2 (determining Court may decline to address on the merits issues not
argued with specificity).

The Court has reviewed the reasoning provided by the ALJ, however, and
finds it is supported by substantial evidence.  Here, the ALJ found Dr. Metoyer's
opinion Plaintiff had mild to moderate limitations generally supported by his own
examination findings and consistent with the record as a whole, which also showed
generally normal mental status examinations.  Tr. 34 (citing Tr. 535-36).  The ALJ
discounted Dr. Metoyer's marked limitations, however, finding them vague and
unclear.  *Id*.  The ALJ also explained that as the RFC contained "a significant
restriction on interaction with others, the marked limitation suggested here would
not be triggered."  *Id*.  "[T]he ALJ is the final arbiter with respect to resolving
ambiguities in the medical evidence."  *Tommasetti*, 533 F.3d at 1041.  An ALJ
may also reject a medical opinion if it is conclusory, inadequately supported, or not
supported by the record.  *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d
947, 957 (9th Cir. 2002); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,
1195 (9th Cir. 2004).  The ALJ has the discretion to evaluate and weigh the
evidence and on this record the ALJ's findings are reasonable.  Accordingly, the
ALJ's finding that Dr. Metoyer's opinion was generally persuasive with the
exception of the marked limitation is supported by substantial evidence.

ORDER GRANTING DEFENDANT'S MOTION . . . - 11

*2. Ms. Sjostrom*

In August 2019, Ms. Sjostrom completed a psychological/psychiatric evaluation on behalf of Washington State DSHS and rendered an opinion on Plaintiff's level of functioning.  Tr.  547-56.  Ms. Sjostrom diagnosed Plaintiff with PTSD and major depressive disorder, moderate, with anxious distress; and rule out diagnoses of cannabis use disorder and ADHD.  Tr. 551.  She opined Plaintiff had marked limitation in her ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and in her ability to complete a normal work day and workweek without interruptions from psychologically based symptoms; and moderate limitation in her ability to understand, remember, and persist in tasks by following detailed instructions; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and to ask simple questions or request assistance, and to set realistic goals and plan independently. *Id*.  She opined the overall severity based on the combined impact of all diagnosed mental impairments was marked.  Tr. 552.  Ms. Sjostrom recommended Plaintiff's be referred for a chemical dependency evaluation to rule out a formal cannabis use disorder diagnoses given her pattern and frequency of marijuana use; she noted while some anxious distress could be attributed to marijuana use, Plaintiff's diagnosis of PTSD and depression were believed to be independent from her use. *Id*.

Ms. Sjostrom opined Plaintiff's mental health symptoms did not appear to be adequately managed with her treatment and were likely to significantly interfere with her ability to withstand the social pressures and expectations of full-time employment.  She recommended Plaintiff continue weekly counseling, and she opined that with treatment services it was not unreasonable to assume Plaintiff's work impairment could improve within six to 12 months.  She opined a vocational rehabilitation referral may be helpful.  *Id*.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

The ALJ found Ms. Sjostrom's opinion unpersuasive because it was not supported by her examination and was inconsistent with other evidence in the record. Tr. 36. The more relevant objective evidence and supporting explanations that support a medical opinion, and the more consistent an opinion is with the evidence from other sources, the more persuasive the medical opinion is. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). Here, the ALJ found Ms. Sjostrom's opinion was not supported by her mental status examination, which showed thought process within normal limits, and Ms. Sjostrom observed Plaintiff did not present with any disturbance in reality testing. Tr. 35 (citing Tr. 553). Plaintiff's perception, memory, and concentration were also within normal limits, and she could spell the word "world" forward and backwards. *Id.* The ALJ also determined Dr. Sjostrom's opinion was also inconsistent with other evidence in the record, which showed low depression scores, routine treatment, normal psychiatric examination findings, and high functioning activities of daily living. *Id.* (citing Tr. 362-69, 794, 1130, 1264).

16
17
18
19
20
21
22

Plaintiff has not challenged the ALJ's reasons for rejecting Ms. Sjostrom's limitations, therefore any challenge to the findings is waived. *See Carmickle*, 533 F.3d at 1161 n.2 (determining Court may decline to address on the merits issues not argued with specificity). The ALJ reasonably determined that Ms. Sjostrom's opinion was not supported by her mental status exam findings and inconsistent with other evidence in the record. On this record, the Court finds the ALJ's reasons for finding the opinion unpersuasive are supported by substantial evidence.

23

*3. Dr. Genthe*

24
25
26

In December 2019 and January 2021 Dr. Genthe performed psychological evaluations on behalf of Washington State DSHS and rendered opinions on Plaintiff's level of functioning. Tr. 557-74.

27
28

In December 2019, Dr Genthe diagnosed Plaintiff with depressive disorder, mild; PTSD; and cannabis use disorder, mild. Tr. 559. He opined she had marked

ORDER GRANTING DEFENDANT'S MOTION . . . - 13

limitation in her ability to communicate and perform effectively in a work setting, and to maintain appropriate behavior in a work setting; and moderate limitation in her ability to ask simple questions and request assistance. Tr. 560. He opined the overall severity based on the combined impact of all diagnosed mental impairments was marked. *Id.* He opined the effects on basic work activities was not primarily the result of a substance use disorder but recommended chemical dependency assessment or treatment. Tr. 561. He opined vocational training or services would eliminate barriers to employment. *Id.* Dr. Genthe opined despite having taken mental health medications for some time, Plaintiff's treatment regimen did not appear to be adequately targeting interfering symptoms, and he recommended psychiatric consultation to review her regimen and dosages for effectiveness. *Id.* He opined her prognosis was guarded and "at this time, she is unlikely to function adequately, and/or consistently in a work setting until her psychological symptoms have been managed more effectively." *Id.*

In January 2021, Dr. Genthe conducted a second psychological/psychiatric evaluation and diagnosed Plaintiff with major depressive disorder, PTSD, and ADHD, combined presentation. Tr. 570. Dr. Genthe opined Plaintiff had marked limitation in her ability to understand, remember, and persist in tasks by following detailed instructions; and in her ability to adapt to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and to complete a normal workday and work week without interruptions from psychologically based symptoms. Tr. 570. He opined she had moderate limitation in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision; and in her ability to learn new tasks, ask simple questions and request assistance, and to set realistic goals and plan independently. *Id.* He opined the overall severity based on the combined impact of all diagnosed mental

ORDER GRANTING DEFENDANT'S MOTION . . . - 14

impairments was marked.  Tr. 571.  He did not recommend chemical dependency assessment or treatment, and he indicated vocational training or services would minimize or eliminate barriers to employment.  *Id*.  Dr. Genthe opined that from a mental health perspective Plaintiff's prognosis was guarded and that "at this time, she is unlikely to function adequately, and/or consistently in a work setting until her psychological symptoms have been managed more effectively."  *Id*.

The ALJ found Dr. Genthe's opinions unpersuasive because they were not supported by his examinations and were inconsistent with other evidence in the record.  Tr. 36-37.  The more relevant objective evidence and supporting explanations that support a medical opinion, and the more consistent an opinion is with the evidence from other sources, the more persuasive the medical opinion is.  20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2).  Here, the ALJ explained Dr. Genthe's opinions were not supported by his own entirely normal mental status exams, which showed normal memory, concentration, and perception, no difficulty following the conversation, normal insight and judgement and level of understanding; and overall logical, coherent, goal-directed, and future oriented thought content.  Tr. 36-37 (citing Tr. 563, 572-73).  The ALJ also determined Dr. Genthe's opinion was inconsistent with other evidence in the record, which showed low depression scores, routine treatment, normal psychiatric examination findings, and high functioning activities of daily living.  Tr. 37 (citing Tr. 362-69, 794, 1130, 1264).  As with Ms. Sjostrom's opinion *supra*, Plaintiff has not challenged the reasons the ALJ gave for rejecting Dr. Genthe's limitations, therefore any challenge to the findings is again waived.  *See Carmickle*, 533 F.3d at 1161 n.2.

Upon independent review of examinations, on this record the Court finds the ALJ's conclusion Dr. Genthe's opinion is not supported by his own mental status exams and inconsistent with other evidence in the record is supported by substantial evidence.

*4. Mr. Davis*

In July 2021, Mr. Davis provided a letter on Plaintiff's behalf. Tr. 1049. Mr. Davis noted Plaintiff had worked with him for six years and struggled to manage anxiety and PTSD symptoms. He opined "limitations for her ability to do work related activities include[d] fatigue, restlessness, irritability, difficulty concentrating to enable completion of tasks, and sleep disturbances." *Id*. He noted anxiety attacks occurred on a frequent basis when Plaintiff was outside of her home, in crowds or open spaces with people in close proximity. *Id*. He noted fear of a panic attack in public induced anxiety and more withdrawal from public spaces or social situations. *Id*. He opined she had other barriers that included impairments in memory, maintaining concentration and follow through with instructions, and that Plaintiff struggled to interact with make authority figures, supervisors, or coworkers. *Id*. He opined Plaintiff had minimal capacity to adapt to changes in her environment or operate in chaotic environments and had shown limited capacity to adapt to the world environment beyond what was recognizable in her daily environment. *Id*.

The ALJ found Mr. Davis' opinion largely unpersuasive because he did not identify specific mental work-related limitations, and his statements were not supported by his treatment notes. Tr. 37. The ALJ also found Mr. Davis' opinion inconsistent with other evidence in the record, which showed low depression and anxiety screening total scores, routine treatment, normal psychiatric examination findings, and high functioning activities of daily living. Tr. 37 (citing Tr. 362-69, 794, 1130, 1264).

Plaintiff has not challenged the ALJ's reasons for rejecting Mr. Davis' limitations, nor provided any analysis of Mr. Davis' opinion, therefore any challenge to the ALJ's findings is again waived. *See Carmickle*, 533 F.3d at 1161 n.2.

Plaintiff does argue that the ALJ erred because the ALJ failed to assess the consistency of the opinions of Ms. Sjostrom and Dr. Genthe because these opinions were consistent in terms of diagnoses and functional limitations; and Plaintiff also contends these opinions are consistent with the limitations provided by Mr. Davis and evidence that Plaintiff was granted an accommodation in a 2019 trial in County Superior Court. ECF No. 11 at 13; *see* 1160-63. However, as discussed *supra*, the ALJ provided reasons supported by substantial evidence to discount the opinions of Ms. Sjostrom and Dr. Genthe using the factors of consistency and supportability as required by the regulations, which Plaintiff failed to challenge. Plaintiff mentions Mr. Davis' opinion and records, but provides no discussion of these; and, as Defendant points out, under the regulations the ALJ is not required to provide analysis of any accommodations provided to Plaintiff in her court case. ECF No. 13 at 8-9; *see* 20 C.F.R. § 404.1504, 404.1520b(c).

5.  *State Agency Consultants*

The ALJ also found the opinions of the state agency psychological consultations more persuasive than the opinions discussed *supra*. Tr. 37. On July 30, 2021, Kent Reade Ph.D. reviewed Plaintiff's records and rendered an opinion on her level of functioning. Tr. 90-91. Dr. Reade noted Plaintiff's diagnoses of major depression, ADHD, and PTSD, and opined Plaintiff was capable of carrying out simple routine tasks; and because of her anxiety with people being in close proximity and being anxious being around large groups of people, she should have only brief and superficial contact with the general public and her coworkers. Tr. 90-91. He opined she was capable of adapting to minor workplace changes. Tr. 91. In February 2022, Jan Lewis, Ph.D., affirmed Dr. Reade's opinion. Tr. 111-13.

The ALJ found the state agency opinions were supported by explanations and generally consistent with the medical evidence which showed Plaintiff's anxiety had been well controlled. Tr. 37 (citing Tr. 703); *see also, e.g.*, Tr. 689,

711-12, 1115, 1124.  The ALJ determined the state agency opinions were also consistent with the record as a whole, which showed low depression and anxiety total screening scores, routine treatment, normal psychiatric findings, and high functioning activities of daily living.  Tr. 37 (citing Tr. 362-69, 794, 1130, 1264); *see also, e.g.*, Tr. 592, 662-63, 689, 692, 711-12, 848, 984, 986-87, 1115, 1124, 1176, 1267, 1171, 1179, 1209, 1220, 1237.  On this record, the ALJ reasonably determined the state agency opinions were more persuasive than the other mental health opinions.

The ALJ reasonably assessed the medical opinion evidence.  To the extent the evidence could be interpreted differently it is the role of the ALJ to resolve conflicts and ambiguity in the evidence.  *Morgan*, 169 F.3d at 599-600.  Where evidence is subject to more than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (recognizing the court only disturbs the ALJ's findings if they are not supported by substantial evidence).

Plaintiff is not entitled to remand on this issue.

## C.  Plaintiff's Symptom Claims

Plaintiff contends the ALJ erred by improperly rejecting Plaintiff's symptom testimony.  ECF No. 11 at 14-18.  It is the province of the ALJ to make determinations regarding a claimant's subjective statements.  *Andrews,* 53 F.3d at 1039.  However, the ALJ's findings must be supported by specific, cogent reasons.  *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because it is unsupported by medical evidence.  *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen*, 80 F.3d at 1281; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  "General

findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester* at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show [their] work[.]"). Thus, to satisfy the substantial evidence standard, the ALJ must provide specific, clear, and convincing reasons which explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony. *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

The ALJ concluded Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. Tr. 27.

### 1. Objective Evidence

The ALJ discounted Plaintiff's symptom complaints because the objective findings did not provide strong support for Plaintiff's allegations. *Id.* An ALJ may not discredit a claimant's symptom testimony and deny benefits solely because the degree of the symptoms alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989); *Burch*, 400 F.3d at 680 (9th Cir. 2005). However, the objective medical evidence is a relevant factor, along with the medical source's information about the claimant's pain or other symptoms, in determining the severity of a claimant's symptoms and their disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

Here, the ALJ noted Plaintiff was diagnosed with degenerative joint disease of the knees and bilateral shoulders and left shoulder impingement, and that she

reported pain and had had several shoulder injections and physical therapy for her shoulder. Tr. 28 (citing Tr. 1039-40). The ALJ noted she was seen in January 2018 for knee pain and that upon exam that time her knees had full range of motion, with anterior crepitus noted greater on the right; and exam of the left knee revealed palpable tenderness along the joint lines. *Id*. The ALJ noted x-rays showed no acute abnormality or severe degenerative changes in either knee, with patellofemoral changes more severe in the right knee; and she was diagnosed with mild to moderate osteoarthritis in both knees. *Id*. (citing Tr. 1040, 1047-48). The ALJ noted Plaintiff was diagnosed with chronic left shoulder pain following a blunt contusion injury in 2015, and an MRI showed acromioclavicular (AC) joint arthrosis with synovitis and edema. *Id*. (citing Tr. 1040). The ALJ noted history of injections in her knees, left shoulder, and left biceps tendon, as well as physical therapy, but that surgical treatment was not recommended. *Id*. (citing Tr. 1041).

The ALJ noted upon physical exam in March 2019 Plaintiff had normal range of motion and her gait was normal. *Id*. (citing Tr. 768). The ALJ noted upon exam of her left shoulder in April 2019, Plaintiff was positive for pain with impingement testing, and positive for tenderness to palpation at the biceps tendon and AC joint, with positive cross-adduction test. Tr. 29 (citing Tr. 752). She was diagnosed with left shoulder mild subacromial impingement, biceps tendonitis, and AC joint arthritis; she received steroid injections at her joints. *Id*.

The ALJ noted Plaintiff had full range of motion in upper and lower extremities bilaterally at an exam in September 2019. *Id*. (citing Tr. 690). The ALJ noted at a February 2020 orthopedic appointment for bilateral knee pain Plaintiff demonstrated normal gait and full range of motion in her knees, although significant anterior crepitus was noted in both knees, worse on the right, as well as tenderness over both medial joint lines; the ALJ noted there was no knee instability and she was again assessed with mild to moderate osteoarthritis on both knees, worse in the right patellofemoral compartment. *Id*. (citing Tr. 626-27).

The ALJ noted at a consultative exam in July 2021, Plaintiff's physical exam showed normal gait, she used no assistive devices, muscle tone was intact with no atrophy and strength was normal; and her range of motion was normal in upper and lower extremities bilaterally. *Id*. (citing Tr. 1068-69).  The ALJ noted x-rays of Plaintiff's shoulder in December 2021 showed no fracture, dislocation, or significant osteoarthritis. *Id*. (citing Tr. 1126).  Upon exam at that time, Plaintiff's left shoulder showed pain with impingement testing, as well as tenderness to palpation to the biceps tendon at the groove.  Tr. 29-30 (citing Tr. 1128).

The ALJ noted upon exam for bilateral knee pain in April 2022, Plaintiff demonstrated normal gait, she had full range of motion bilaterally, and significant crepitus was noted in the right knee, as well as palpable tenderness around the medial joint line bilaterally.  Tr. 30 (citing Tr. 1120-21).  The ALJ noted at that time December 2021 x-rays of her knees were reviewed and compared with past imaging; her provider noted mild to moderate degenerative changes with no progression or acute findings and Plaintiff was diagnosed with chronic bilateral knee pain and mild to moderate patellofemoral osteoarthritis in both knees. *Id*.

As discussed *supra*, at step two the ALJ determined there was not objective evidence that rheumatoid arthritis was a medically determinable impairment.  Tr. 24.

In terms of mental health, the ALJ noted Plaintiff scored in the range of normal or minimal depression in August 2018, and in the range of mild anxiety symptoms on PHQ-9 and GAD-7 screenings. *Id*. (citing Tr. 848).  The ALJ noted mental status exam on that date was essentially unremarkable with the exception of impaired cognitive function. *Id*. (citing Tr. 851).  The ALJ noted while Plaintiff's mood was also anxious and her mood was congruent at that time, her attitude was cooperative, her speech was normal, she was oriented, and her attention, concentration, and thought process were observed to be intact. *Id*.  The ALJ noted in March 2019, Plaintiff was alert and oriented, and her mood and affect were

observed as normal.  Tr. 30-31 (citing Tr. 767-68).  The ALJ noted in July 2019

Plaintiff's PHQ-9 score was zero, indicating no depression, and upon exam she

was cooperative with appropriate mood and affect observed.  Tr. 31 (citing Tr. 705,

707).  The ALJ noted thought process, perception, memory, and concentration

were also within normal limits in August 2019.  *Id*.  (citing Tr. 553).

The ALJ noted in December 2021, Plaintiff was observed to be alert and

oriented, and her mood, behavior, thought content, and judgement were normal.

Tr. 32 (citing Tr. 1130).  The ALJ noted depression and anxiety screening scores

indicated only mild symptoms in July 2022, and upon mental status exam she was

alert, oriented, and cooperative with appropriate and normal mood and affect.  *Id*.

(citing Tr. 1115).

The Court must consider the ALJ's decision in the context of the "entire

record as a whole," but if the "evidence is susceptible to more than one rational

interpretation, the ALJ's decision should be upheld."  *Ryan v. Comm'r of Soc. Sec.*,

528 F.3d 1194, 1198 (9th Cir. 2008) (internal quotation marks omitted).  Further,

where the ALJ's interpretation of the record is reasonable, as it is here, it should

not be second-guessed.  *Rollins*, 261 F.3d at 857.  The ALJ reasonably concluded

that the objective medical evidence did not support the level of impairment alleged

by Plaintiff.  This was a clear and convincing reason, when combined with the

other reasons offered, to discount Plaintiff's symptom reports.

*2.  Activities*

The ALJ determined Plaintiff's activities were inconsistent with her

symptom claims.  Tr. 33.  The ALJ may consider a claimant's activities that

undermine reported symptoms.  *Rollins*, 261 F.3d at 857.  If a claimant can spend a

substantial part of the day engaged in pursuits involving the performance of

exertional or non-exertional functions, the ALJ may find these activities

inconsistent with the reported disabling symptoms.  *Fair*, 885 F.2d at 603; *Molina

v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by* 20

C.F.R. §§ 404.1502(a), 416.902(a).  "While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discount a claimant's symptom claims when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting" or when activities "contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1112-13.  "Only if the level of activity is inconsistent with Claimant's claimed limitations" do daily "activities have any bearing on Claimant's credibility." *Ferguson,* 95 F.4th at 1203 (quoting *Reddick*, 157 F.3d at 722).

Here, the ALJ noted Plaintiff reported high functioning activities of daily living.  Tr. 33-34.  The ALJ noted Plaintiff reported in August 2019 that she could perform basic household chores and laundry, attend to basic hygiene and self-care, and she managed her own funds and participated in hobbies including riding her motorcycle, swimming, and spending time with her children.  Tr. 33 (citing Tr. 549).  The ALJ noted in January 2021 Plaintiff reported she helped her children with school, did things around the house, and could care for hygiene needs; and she reported she could independently prepare her own meals and perform chores including washing dishes, doing laundry, vacuuming, and dusting.  Tr. 31 (citing Tr. 568-69).  Plaintiff reported at that time she could manage her medications, schedule her own appointments with doctors and others, and shop for groceries and other needs whenever she needed them.  *Id*.  The ALJ also noted Plaintiff reported attending a family get-together in July 2021.  Tr. 31-32 (citing Tr. 1209, 1220).  The ALJ noted Plaintiff worked from home early in the COVID-19 pandemic and home-schooled her children during that time.  Tr. 33-34.

The ALJ concluded Plaintiff "described daily activities that are not limited to the extent one would expect given the complaints of disability symptoms and limitations."  Tr. 34.  While Plaintiff offers a different interpretation of the evidence, the ALJ reasonably found Plaintiff's activities were inconsistent with her

claims of disabling limitations during the period at issue. This was a clear and convincing reason to discount Plaintiff's symptom reports.

### 3. Conservative and Infrequent Treatment

The ALJ also found that Plaintiff's routine and conservative course of treatment was inconsistent with her allegations. Tr. 33. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *See Tommasetti*, 533 F.3d at 1039.

Here, the ALJ noted treatment consisted of physical therapy and Plaintiff had cortisone injections in her shoulder, biceps tendon, and bilateral knees. Tr. 28-29 (citing Tr. 626-27, 1039). The ALJ noted history of injections in her left shoulder and left biceps tendon, as well as physical therapy, but that no surgical treatment was recommended. *Id*. (citing Tr. 627, 1041). In February 2020, her provider noted she had last been seen in May 2019, when she received cortisone injections in both knees that she reported worked well; Plaintiff reported she was doing well until the last several weeks. Tr. 29 (citing Tr. 626). In February 2020, she again received injections, was instructed on ice application, and instructed to return on an as needed basis; she was encouraged to stay as active as possible. Tr. 29 (citing Tr. 627). In December 2021, Plaintiff reported her last set of injections provided a significant amount of relief, but that her left shoulder was starting to bother her again and she received a left shoulder injection at that time; she reported she did well with that treatment at follow up appointment in January 2022, and she requested and received a biceps tendon injection at that time. *Id*. (citing Tr. 1125).

The ALJ noted there was no evidence of mental health counseling between the alleged onset date though early 2021, and only low frequency mental health counseling after that time, with an average of about one session every three weeks. Tr. 33 (citing Tr. 1049-64, 1209-47). The ALJ noted the record was devoid of any intensive outpatient programs or any inpatient treatment, and that when Plaintiff participated in group therapy, she "showed leadership" in that context. *Id*.

The ALJ noted Plaintiff reported her ADHD was well controlled with medications in November 2018.  Tr. 30 (citing Tr. 793).  The ALJ noted in March 2019 Plaintiff reported she was doing well on medication and things were going well for her.  *Id*. (citing Tr. 766).  The ALJ noted that records from February 2023 showed Plaintiff reported she had a panic attack and was arrested, but that she was back on her medications again and feeling better; and she denied suicidal ideation and had only mild depression symptoms.  Tr. 32 (citing Tr. 1262-64).  She was diagnosed with anxiety and instructed to continue taking her medication as prescribed, and she was advised to continue to see her counselor and "[w]hen things were more stable, she should consider a referral to behavioral health."  *Id*.  The ALJ also noted Plaintiff's providers indicated she had a history of noncompliance in keeping medical appointments.  Tr. 28 (citing Tr. 1040).

The ALJ reasonably discounted Plaintiff's symptom complaints in part because treatment was conservative and infrequent, and this was a clear and convincing reason to discount Plaintiff's symptom reports.

### 4.  Inconsistent Statements

The ALJ also found Plaintiff's pattern of past statements were inconsistent with her allegations.  Tr. 33.  In evaluating a claimant's symptom claims, an ALJ may consider the consistency of an individual's own statements made in connection with the disability-review process with any other existing statements or conduct under other circumstances.  *Smolen*, 80 F.3d at 1284.

Here, the ALJ noted that Plaintiff's PHQ-9 and GAD-7 scores, which are self-reported measures of depressive and anxiety symptoms, were usually in the none to mild range and were never above the moderate range.  Tr. 33.  The ALJ noted Plaintiff repeatedly reported that her anxiety was improved on medications and that things were going well for her.  *Id*. (citing Tr. 689, 766, 793, 1115, 1130).

The ALJ noted that in September 2019 Plaintiff reported her anxiety had been well controlled since a court case had settled.  Tr. 31 (citing Tr. 689, 703).

The ALJ also noted Plaintiff reported she felt much better in in September 2019, and in January 2021, Plaintiff reported that she had no significant difficulty getting along with others. Tr. 31 (citing Tr. 567).

The ALJ also concluded Plaintiff made statements that suggest "she deliberately avoided earnings and activities she was capable of performing in order to avoid prejudicing her sources of secondary gain." Tr. 35. The ALJ noted at an appointment Plaintiff reported she would like to start college "once her Social Security disability was approved." *Id*. (citing Tr. 1235). The ALJ also noted records showed Plaintiff cared for her elderly mother and had thought about signing up to be a paid caretaker, but "decided against it because doing so would end up lessening her financial assistance income." *Id*. (citing Tr. 1246). The ALJ concluded such evidence indicated Plaintiff considered herself capable of work-like activities that were inconsistent with her claim for disability.

On this record, the ALJ reasonably concluded Plaintiff's symptom claims were inconsistent with some of her statements. The ALJ's finding is supported by substantial evidence, and this was also a clear and convincing reason to discount her symptom claims.

The ALJ provided clear and convincing reasons supported by substantial evidence to discount Plaintiff's symptom claims. Plaintiff is not entitled to remand on this issue.

**D. Step Five**

Plaintiff contends that the ALJ failed to meet the ALJ's burden at step-five. ECF No. 11 at 18-19.

At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389. In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational

expert. *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at 1101. The hypothetical that ultimately serves as the basis for the ALJ's determination, *i.e.*, the hypothetical that is predicated on the ALJ's final RFC assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228.

The ALJ's RFC need only include those limitations found credible and supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211,1217 (9th Cir. 2005) ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record."). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Id*. However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence." *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006). Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence. *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). A Plaintiff fails to establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff contends the ALJ erred by relying on the vocational expert's response to an incomplete hypothetical. ECF No. 11 at 18-19. However, Plaintiff's argument assumes that the ALJ erred in the analysis of the medical

opinions and other evidence.  As addressed *supra*, the ALJ properly assessed the medical opinion evidence and properly discounted Plaintiff's symptom claims. The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis. The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy, and the RFC adequately addresses the evidence in this record.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error and is affirmed.

Accordingly, **IT IS ORDERED:**

1.　　　Defendant's Motion to affirm, **ECF No. 13**, is **GRANTED**.

2.　　　Plaintiff's Motion to reverse, **ECF No. 11**, is **DENIED**.

The District Court Executive is directed to file this Order and provide copies to counsel.  **Judgment shall be entered for Defendant and the file shall be CLOSED**.

**IT IS SO ORDERED.**

DATED November 5, 2024.



_____
ALEXANDER C. EKSTROM
UNITED STATES MAGISTRATE JUDGE